**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 1:17-cv-23070-KMM

IN THE MATTER OF THE ARBITRATION BETWEEN

TRADEWINDS, LTD. d/b/a
TRADEWINDS CONSULTING, LTD.,

Plaintiff,

v.

GRUPO DOLPHIN DISCOVERY and
CONTROLADORA DOLPHIN, S.A. de C.V.,

Defendants.

_______________________________________/

**ORDER**

THIS CAUSE came before the Court upon The Prudential Insurance Company of America, Prudential Legacy Insurance Company of New Jersey, and Cigna Health and Life Insurance Company's (collectively, the "Secured Noteholders") Motion to Recognize Superior Possessory Lien Interest in Collateral Held Outside Florida by Wilmington Trust, to Release Collateral from Writ of Garnishment, to Otherwise Dissolve or Limit Garnishment to Exclude its Effect on the Collateral, Including Due to Lack of Subject Matter Jurisdiction, and for Related Relief. ("Mot.") (ECF No. 130). Plaintiff/Judgment Creditor Tradewinds Consulting, Ltd. ("Plaintiff") filed a response in opposition ("Resp.") (ECF No. 145), and the Secured Noteholders filed a reply ("Reply") (ECF No. 150). The Motion is now ripe for review.

## I. BACKGROUND

This Action arises from a California judgment (the "Judgment") between Plaintiff and Debtors Grupo Dolphin Discovery ("Grupo Dolphin") and Controladora S.A. de C.V. ("Controladora") (collectively, "Debtors") in the Central District of California. *See* (ECF No. 1).

The Judgment affirmed an underlying arbitration award and ordered Debtors to pay Plaintiff $3,678,419.13 plus post-judgment interest at the rate of 1.16% per annum. *See* Resp. at 2. The underlying arbitration ensued after Debtors failed to pay Plaintiff a contractual fee that Plaintiff earned by "obtaining lenders to extend a $115 Million loan for Debtors for, *inter alia*, the acquisition of additional marine-themed amusement parks." *See id.* According to the arbitration panel, Debtors breached their contract with Plaintiff when they failed to pay Plaintiff for its services. *See id.* Plaintiff avers that as of the filing of the instant Motion, Debtors have not made any payment to the arbitration award, which now exceeds $4,000,000 after accounting for interest and fees. *See id.*

Relevant to this matter, Plaintiff served a Writ of Garnishment on Wilmington Trust, the collateral agent for the loan transaction described above, in an effort to collect on the Judgment against Debtors.[1] *See* Mot. at 3–4 (citing (ECF Nos. 100, 105)). On February 6, 2023, Wilmington Trust filed an Amended and Restated Answer to Writ of Garnishment stating that it was not indebted to either Debtor. *See* (ECF No. 109). Moreover, Wilmington Trust identified certain Collateral (hereinafter, "Collateral") in its possession that it averred had been earlier pledged for the benefit of the Secured Noteholders. *See id.* ¶ 4. Shortly thereafter, on March 24, 2023, Wilmington Trust filed a Second Amended and Restated Answer to Writ of Garnishment based on

[1] On June 30, 2023, Plaintiff filed a motion to commence proceedings supplementary against Third-Party Wilmington Trust. *See* (ECF No. 144). In doing so, Plaintiff indicated that it "seeks an order directing the levy and sale, or other orders effectuating the execution of certain stock certificates, trademarks, and other personal property owned by debtor Controladora S.A. de C.V. in possession of Wilmington Trust." *Id.* at 1. The Court granted the motion in part, ultimately permitting Plaintiff to commence proceedings supplementary but ordering Plaintiff to file an amended notice to appear. *See* (ECF No. 159). Once Plaintiff did so, the Court entered a notice to appear as to Wilmington Trust. *See* (ECF No. 163).

an updated collateral spreadsheet ("WT Collateral Spreadsheet) (ECF No. 126-7)[2]. *See* (ECF No. 116). Therein, Wilmington Trust maintains that it possesses collateral for the Secured Noteholders' benefit. *See* Mot. at 5.

Now, the Secured Noteholders seek to limit Plaintiff's ability to execute the Writ of Garnishment against Wilmington Trust. *See generally id.* The Secured Noteholders raise four arguments: (1) the Court lacks subject matter jurisdiction over the Collateral held by Wilmington Trust outside Florida; (2) the Writ of Garnishment only reaches the property of Controladora Dolphin and not Grupo Dolphin Discovery; (3) the Secured Noteholders have superior perfected liens over the Collateral in Wilmington Trust's possession; and (4) Plaintiff cannot garnish a debtor's stock in a Florida corporation or membership interest in a Florida limited liability company. *See id.* at 5–19. Plaintiff clarifies that, as to the Secured Noteholders' second argument, Plaintiff "only seeks to execute on property directly belonging to Controladora at this time." Resp. at 4. The Court therefore does not address that contention. Otherwise, Plaintiff contests the remaining three arguments. *See generally id.*

## II. DISCUSSION

### A. Whether the Court has Jurisdiction Over Property Outside Florida

The first issue the Court must decide is whether the Writ of Garnishment on Wilmington Trust should be dissolved, in whole or in part. The Secured Noteholders argue that Plaintiff has a right to garnishment under Florida law, but that the right is limited to Debtor's personal property located in Florida. *See* Mot. at 5–10. In response, Plaintiff does not contend that the Secured Noteholders' position of Florida garnishment law is incorrect, but instead, argues that Plaintiff filed a motion for supplementary proceedings which the Court has since granted. *See* Resp. at 6–

[2] The WT Collateral Spreadsheet is docketed under seal.

10. Plaintiff avers that the Florida Supplementary Proceedings statute, Fla. Stat. § 56.29(6), gives the Court power to compel Wilmington Trust to turn over property located outside Florida. *See id.* In their Reply, the Secured Noteholders contend that Plaintiff's argument about supplementary proceedings misses the mark because its argument fails to address that garnishment is the incorrect vehicle to obtain relief. *See* Reply at 3–5. For the reasons explained below, the Court agrees with the Secured Noteholders.

Chapter 77 of the Florida Statutes provides the procedure for enforcement of writs of garnishment. In relevant part, the statute states "[e]very person or entity who has sued to recover a debt or has recovered judgment in any court against any person or entity has a right to a writ of garnishment, in the manner hereinafter provided, to subject any debt due to defendant by a third person or any debt not evidenced by a negotiable instrument that will become due absolutely through the passage of time only to the defendant by a third person, and any tangible or intangible personal property of defendant in the possession or control of a third person." Fla. Stat. § 77.01.

When analyzing this statute, courts have recognized that a garnishment proceeding "is not an action *in personam*, nor is it, strictly speaking, a proceeding *in rem*. Partaking of the nature of both, it is frequently classified as a proceeding *quasi in rem*." *Stansell v. Revolutionary Armed Forces of Columbia (FARC)*, 149 F. Supp. 3d 1337, 1339 (M.D. Fla. 2015) (quoting *U.S. Rubber Co. v Poage*, 297 F.2d 670, 673 (5th Cir. 1962)). "Because of the dual nature of a garnishment proceeding, courts sitting in this state have held that a court presiding over a writ of garnishment must not only have personal jurisdiction over the garnishee, but also jurisdiction over the property or '*res*' that is the subject of the writ of garnishment." *Inversiones Y Procesadora Tropical Inprotsa, S.A. v. Del Monte International GMBH*, No. 16-24275-CIV, 2020 WL 6384878, *4 (S.D. Fla. Aug. 5, 2020), *report and recommendation adopted*, 2020 WL 6384299 (S.D. Fla. Oct. 30,

2020)). While personal jurisdiction may be waived, "*in rem* jurisdiction is a very special type of necessary judicial subject matter jurisdiction" under Florida law – one that cannot be waived. *Ctr. Cap. Corp. v. Gulfstream Crane, LLC*, No. 09-61021-CIV, 2009 WL 4909430, at *7 (S.D. Fla. Nov. 25, 2009).

It is the latter issue—whether the Court has *in rem* jurisdiction over the Collateral—that mandates a finding that garnishment is the incorrect vehicle for Plaintiff to attempt to seize the assets held by Wilmington Trust. Florida law is clear—Plaintiff may not execute a writ of garnishment over collateral located outside Florida's territorial jurisdiction. *See Stansell*, 149 F. Supp. 3d at 1340 ("[N]othing in the language of the Florida garnishment statute suggests that they were intended to have extraterritorial application."). Applied here, the Court does not have subject matter jurisdiction to garnish collateral identified on the WT Collateral Spreadsheet that is located outside Florida. *See* WT Collateral Spreadsheet (identifying that all physical Collateral is held outside Florida in Wilmington, Delaware); *see also* ("Jankiewicz Affidavit") (ECF No. 126-1) ("Wilmington Trust has possession of all the physical Collateral listed in the WT Collateral Spreadsheet in Wilmington Trust's physical vault in Wilmington, Delaware."). The Court therefore dissolves the Writ of Garnishment insofar as it seeks to reach collateral that Wilmington Trust holds outside the state.

Plaintiff's argument to the contrary, namely, that the commencement of proceedings supplementary dictates that the Court may order Wilmington Trust to deliver collateral to Florida, does not resolve the issue. Indeed, the Florida proceedings supplementary statute provides:

> The court may order any property of the judgment debtor not exempt from execution or any property, debt, or other obligation due to the judgment debtor, in the hands of or under the control of any person subject to the Notice to Appear, to be levied upon and applied toward the satisfaction of the judgment debt. The court may enter any orders, judgments, or writs required to carry out the purpose of this section, including those orders necessary or proper to subject property or property

> rights of any judgment debtor to execution, and including entry of money judgments as provided in ss. 56.16-56.19 against any person to whom a Notice to Appear has been directed and over whom the court obtained personal jurisdiction irrespective of whether such person has retained the property, subject to applicable principles of equity, and in accordance with chapters 76 and 77 and all applicable rules of civil procedure. Sections 56.16-56.20 apply to any order issued under this subsection.

Fla. Stat. § 56.29(6)(a). Therefore, Plaintiff contends that Florida law permits a court "to order a defendant over whom it has *in personam* jurisdiction to act on foreign property." Resp. at 8 (citing *Shim v. Buechel*, 339 So. 3d 315, 318 (Fla. 2022)).

Put simply, Plaintiff asks the Court to ignore the Florida garnishment statute in favor of the Florida proceedings supplementary statute. This Motion, however, is focused on *garnishment* as the vehicle by which Plaintiff can attempt to collect the collateral from Wilmington Trust. *See generally* Mot. And examined through the lens of Florida garnishment law, portions of the Collateral exist outside Florida, meaning the Court lacks subject matter jurisdiction to garnish that property. *See generally* WT Collateral Spreadsheet. Perhaps the Court may order the seizure and sale of the property located outside Florida subject to the proceedings supplementary statute, as Plaintiff suggests. *See* Resp. at 9 (citing *Cuban Cigar Brands, N.V. v. Tabacalera Popular Cubana, Inc.*, No. 02-23124-CIV, 2008 WL 4279641 (S.D. Fla. Sept. 16, 2008)). But at this juncture, the Court agrees with the Secured Noteholders that Plaintiff may not use garnishment as the vehicle to collect on collateral located outside the state. The Court hereby limits the Writ of Garnishment to collateral that exists within the state of Florida.

**B. Whether Superior Perfected Liens Exists**

The Secured Noteholders assert that even if Plaintiff could force a sale of the Collateral held by Wilmington Trust outside Florida, "Plaintiff's $3.678 million judgment would, at best, be subject to the Secured Noteholders' perfected security liens over the Collateral held by Wilmington Trust for the benefit of the Secured Noteholders." Mot. at 14. Moreover, the Secured Noteholders

argue that "Plaintiff's creditor rights to recover from the Collateral are also constrained since the property is pledged as collateral for secured notes issued by Controladora Dolphin." *Id.* at 16 (citing *In Re McCuan*, No. 9:14-bk-00965-FMD, 2015 WL 7717422, at *3 (Bankr. M.D. Fla. Nov. 30, 2015); *Stengel v. Biggar*, 176 So. 786 (Fla. 1937)). The Secured Noteholders therefore request that the Court recognize their "superior, priority, perfected possessory liens over the Collateral held in Delaware" and hold that "Plaintiff should not be allowed to garnish or execute on the Collateral since the Collateral . . . was pledged as a security to the Secured Noteholders." Reply at 10.

Plaintiff argues that "the question of priority is premature and irrelevant, because the assets have not yet been levied and sold." *See* Resp. at 11 (*citing Hartford Fire Ins. Co. v. N.Y. Mart. Grp., Inc.*, No. 4:18-CV-10276-KMM, 2021 WL 633362, at *5 (S.D. Fla. Jan. 21, 2021), *report and recommendation adopted*, 2021 WL 616949 (S.D. Fla. Oct. 30, 2020), *vacated*, 2021 WL 1738798 (S.D. Fla. May 3, 2021)). In Plaintiff's view, the Secured Noteholders' alleged senior priority interest in the Collateral does not prevent Plaintiff "from exercising its right to execute on Debtor's property." *See id.* at 12.

The Court agrees with Plaintiff that it would be premature to determine which Party has priority over the collateral. Likewise, the Court will not determine whether Plaintiff should be permitted to garnish the Collateral given that the Collateral was allegedly pledged as a security to the Secured Noteholders. The Court has already found that Plaintiff may not use the Writ of Garnishment to collect the Collateral located outside of Florida. *See* Part II. A., *supra*. If Plaintiff is able to otherwise collect the Collateral, perhaps through the proceedings supplementary, the question of priority may then be ripe for adjudication. *See Hartford Fire*, 2021 WL 633362, at *5 ("Once the stock certificates are delivered to the Court, any disagreement about whether [a]

secured creditor has priority over the distributions can be resolved separately.”). But to make that determination now would be advisory, particularly when the Collateral outside Florida is unreachable by garnishment and not present before the Court.[3]

**C. Whether Plaintiff Can Garnish Stock in a Florida Entity**

The Secured Noteholders also argue that three of the thirty-seven items of physical Collateral listed in the WT Collateral Spreadsheet “pertain to pledged notes and stock in a Florida corporation held by Controladora Dolphin.” Mot. at 16. These subject membership interests and stock interests are located outside of Florida, and thus, the Secured Noteholders argue that garnishment “is not the proper vehicle for a judgment creditor to reach those assets.” *Id.* at 18. Moreover, the Secured Noteholders argue that Florida law provides that attachment is the only method for a creditor to levy and execute corporate stock, and a charging order is the sole and exclusive remedy to reach membership interests in a Florida limited liability company. *See id.* at 17. Plaintiff does not provide a rebuttal. *See generally id.*

The Court does not need to determine whether Plaintiff may garnish a stock interest in a corporation or a membership interest in an LLC. The Secured Noteholders argue, and Plaintiff does not contest, that “none of the Collateral listed in the WT Collateral Spreadsheet, including the stock certificates, is held by Wilmington Trust physically in Florida.” *See id.* at 18 (citation and quotation omitted). As discussed above, the Court therefore lacks *in rem* jurisdiction over the

[3] The Secured Noteholders argue that *Hartford Fire* is distinguishable because there, the location of the collateral was unknown, unlike here, where the Collateral is in Wilmington Trust’s control outside Florida. *See* Reply at 9 n.18. Indeed, that the collateral was lost in *Hartford Fire* was the basis for the Court’s jurisdiction, and upon a finding that the collateral was in Ohio, the Court eventually vacated its order. 2021 WL 1738798 (S.D. Fla. May 3, 2021). Nevertheless, the logic about whether the Court may levy stock certificates before determining priority, however, still stands to reason. Independent of the jurisdictional inquiry, the Court remains convinced that any determination about priority can be determined if and when the Collateral is delivered here; this question is independent of whether the Collateral was ever lost.

Collateral. *See* Part II.A, *supra*. Garnishment is the improper vehicle for Plaintiff to attempt to reach the Collateral, including the stock and membership interests. And while it may be true that Florida law provides for attachment and charging orders as the sole methods by which Plaintiff can reach corporate stock or membership interests in a limited liability company, the Court need not make such a finding here when it has already found garnishment of the foreign Collateral improper.

## III. CONCLUSION

For the foregoing reasons, it is herby ORDERD AND ADJUDGED that:

1. The Motion (ECF No. 130) is GRANTED IN PART and DENIED IN PART.
2. The reach and application of the Writ of Garnishment shall be limited to all Collateral, if any, that exists within the state of Florida.
3. The Motion is DENIED WITHOUT PREJUDICE insofar as it seeks a finding that the Secured Noteholders possess superior, priority, perfected liens over the Collateral held outside Florida by Wilmington Trust as collateral agent for the Secured Noteholders.
4. The Motion is DENIED WITHOUT PREJUDICE insofar as it seeks a finding that garnishment is the improper vehicle to execute on stock interests in a corporation or membership interests in a limited liability corporation.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 1st day of March, 2024.

K. MICHAEL MOORE
UNITED STATES DISTRICT JUDGE

c: All counsel of record