UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 1:17-CV-23070-KMM

IN THE MATTER OF THE ARBITRATION BETWEEN

TRADEWINDS, LTD. d/b/a
TRADEWINDS CONSULTING, LTD.,

Plaintiff,

v.

GRUPO DOLPHIN DISCOVERY and
CONTROLADORA DOLPHIN, S.A. de C.V.,

Defendants.
_______________________________________/

**ORDER**

**THIS CAUSE** is before the Court on Plaintiff's Motion for an Order Directing Impleaded Party Wilmington Trust to Deliver Stock Certificates of Dolphin Leisure Inc. and Trademarks Owned by Controladora to Florida for Sale and Execution (ECF No. 181).[1] Prudential Insurance Company of America, Prudential Legacy Insurance Company of New Jersey, and Cigna Health and Life Insurance Company (the "Noteholders") filed a Response brief (ECF No. 192), as did Defendant Controladora Dolphin, S.A. de C.V. ("Controladora") (ECF No. 194). Wilmington Trust filed a Response in which it "incorporate[d] and adopt[ed] the defenses and challenges asserted" in the Noteholders' Response. (ECF No. 195). Plaintiff filed a Reply (ECF No. 209), to which the Noteholders, with leave of the Court, filed a Sur-Reply (ECF No. 215).

[1] Pursuant to 28 U.S.C. § 636 and the Magistrate Rules of the Local Rules of the Southern District of Florida, the Honorable K. Michael Moore, United States District Judge, referred this Motion to me to take all necessary and proper action as required by law and/or to issue a Report and Recommendations. (ECF No. 187).

After thorough consideration of the Motion, Responses, Reply, and Sur-Reply, and being otherwise fully advised in the premises hereof, Plaintiff's Motion for an Order Directing Wilmington Trust to Deliver Stock Certificates of Dolphin Leisure Inc. and Trademarks Owned by Controladora to Florida for Sale and Execution (ECF No. 181) is **GRANTED** to the extent it requests an Order requiring Wilmington Trust to relocate the Debtors' tangible property to Florida, but Plaintiff's request for an Order of Sale and Execution is **DENIED, as premature**.

## I. BACKGROUND

Plaintiff initiated arbitration against Grupo Dolphin Discovery and Controladora Dolphin, S.A. de C.V. ("Debtors") for breach of contract and obtained an award. (ECF No. 1). The United States District Court for the Central District of California affirmed the award and entered judgment against Debtors in the amount of $3,678,419.13 plus post-judgment interest at a rate of 1.16 percent per annum. (*Id.*). As of the filing of the instant Motion, Plaintiff avers that Debtors have not satisfied the judgment in any amount and that it is currently owed over four million dollars. (ECF No. 181).

Plaintiff registered its judgment in this Court on August 14, 2017. (ECF No. 1). The Clerk of Court issued a writ of execution to Debtors (ECF No. 5), which allegedly remains outstanding. Plaintiff moved for and the Court issued a writ of garnishment to Wilmington Trust. (ECF Nos. 97, 99, 100). Wilmington Trust filed an Amended and Restated Answer to the writ stating that it was not indebted to Debtors, but it served as a collateral agent for certain assets pledged by Controladora Dolphin as security for a Note Purchase and Guarantee Agreement. (ECF No. 116). Wilmington Trust holds all tangible collateral pledged by Controladora Dolphin in Delaware. *See* (ECF No. 178 at 5).

Plaintiff moved to commence proceedings supplementary and implead Wilmington Trust. (ECF No. 144). The Court commenced proceedings supplementary (ECF No. 159) and, pursuant to Florida Statutes section 56.29(2), issued a Notice to Appear (ECF No. 163) that required Wilmington Trust to file affidavit stating why the following property in its possession should not be applied to satisfy Plaintiff's judgment: stock certificates of Dolphin Leisure, Inc., stock certificates of foreign entities owned by Controladora Dolphin, and United States trademarks owned by Controladora Dolphin (collectively, the "Assets").

The Prudential Insurance Company of America, Prudential Legacy Insurance Company of New Jersey, and Cigna Health and Life Insurance Company (the "Noteholders") intervened, asserting that they hold perfected security interests in all assets of Controladora Dolphin, which secure a one-hundred-million-dollar note. (ECF No. 124). The Noteholders moved the Court to recognize their superior possessory lien interests in collateral held outside of Florida by Wilmington Trust and release the collateral from the writ of garnishment. (ECF No. 130).

The Court agreed that it lacked jurisdiction to garnish property that resides outside of Florida. (ECF No. 178). The Order noted, "[p]erhaps the Court may order the seizure and sale of the property located outside Florida subject to the proceedings supplementary statute . . . . [But] Plaintiff may not use garnishment as the vehicle to collect on collateral located outside the state." (*Id.* at 6). Accordingly, the Court limited the writ of garnishment issued to Wilmington Trust to property that exists within the state of Florida. (*Id.*). However, the Noteholders' request that the Court recognize its security interests as superior was premature. (*Id.* at 7). Notably, the Court stated, "[i]ndependent of the jurisdictional inquiry, the Court remains convinced that any determination about the priority [of interests in the Assets] can be determined if and when the Collateral is delivered here." (*Id.* at 8 n.3).

Plaintiff obtained leave from the Court to file a supplemental complaint against Wilmington Trust and MS Leisure Corporation. (ECF No. 186). The Supplemental Amended Complaint alleges that Debtors pledged all of their assets and transferred them to Wilmington Trust's vault in Delaware with actual intent to hinder, delay, or defraud Plaintiff's recovery. (ECF No. 217 at ¶¶ 40–41). Wilmington Trust answered the Supplemental Amended Complaint, in which it "admits that this Court has personal jurisdiction over Wilmington Trust in this matter." (ECF No. 219, resp. to ¶ 8).

Plaintiff now brings this Motion for an Order Directing Wilmington Trust to Deliver Stock Certificates and Trademarks Owned by Controladora Dolphin to Florida for Sale and Execution. (ECF No. 181). The Motion argues that section 56.29(6) of the Florida Statutes empowers the Court to enter such an order.

In response, the Noteholders, Controladora, and Wilmington Trust (collectively, "Respondents") first argue that the Assets cannot be levied because under Florida law, property pledged as security for a loan are not reachable by a judgment creditor. Second, Respondents contend that section 56.29(6) does not give a court authority to order a third-party to relocate to Florida property that is not in a debtor's possession, not "due to" the debtor, and subject to the lien of another creditor. Third, Respondents argue that Plaintiff's Motion is premature because seizure of the Assets can only take place after Plaintiff has prevailed at summary judgment or trial. Fourth, Respondents say that Plaintiff has not established that it has a judgment lien certificate because the certificate Plaintiff filed is issued to an entity with a different name. Finally, Respondents renew their request that the Court recognize that their interests in the Assets are superior to Plaintiff's.

## II. AUTHORITY OF MAGISTRATE JUDGE

Title 28, Section 636 of the United States Code authorizes a district judge to "designate a magistrate judge to hear and determine any pretrial matter pending before the court," except for eight dispositive motions. 28 U.S.C. § 636(b)(1)(A); *see United States v. Raddatz*, 447 U.S. 667, 673 (1980). If a pretrial matter is not dispositive of a party's claim or defense, then the magistrate judge may enter an order deciding that matter, and the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." *Companhia Energetica Potiguar v. Caterpillar Inc.*, No. 14-CV-24277, 2016 WL 3102225, at *1 (S.D. Fla. June 2, 2016) (Goodman, M.J.) (quoting Fed. R. Civ. P. 72(a)). By contrast, if a magistrate judge hears, without the parties' consent, a pretrial matter dispositive of a claim or defense, then the district judge must review *de novo* any part of the magistrate judge's recommended disposition that has been properly objected to. *Id.*

To determine whether a motion is dispositive of a claim or defense, courts undertake a functional analysis of the motion's effect on the litigation. *See ML-CFC 2007-6 P.R. Props., LLC v. BPP Retail Props., LLC*, 951 F.3d 41, 47–48 (1st Cir. 2020) (citing cases in 9th and 6th circuits); *see also Jordan v. Comm'r, Miss. Dep't of Corr.*, 947 F.3d 1322, 1327 (11th Cir. 2020) ("The Federal Magistrate's Act lists *several examples* of motions that qualify as dispositive motions . . . ." (emphasis added)). The mere fact that a magistrate judge's ruling on a nondispositive matter ultimately affects the outcome of a claim or defense does not make the ruling dispositive. *See Companhia Energetica Potiguar*, 2016 WL 3102225, at *2 (quoting *Lithuanian Com. Corp. v. Sara Lee Hosiery*, 179 F.R.D. 450, 456 (D.N.J. 1998)).

Here, Plaintiff claims that it is entitled to the proceeds from the sale of the Assets to satisfy its outstanding judgment. The Noteholders dispute this, claim that their security interests prohibit

Plaintiff from executing upon the Assets, and, if the Assets are levied, claim that they have priority to possession of the Assets or any proceeds from the sale thereof to satisfy their one-hundred-million-dollar note.

Plaintiff now moves for an order directing Wilmington Trust to deliver the Assets to Florida for sale and execution. Because the Assets are presently beyond the *in rem* jurisdiction of the Court, the delivery of the Assets to Florida is a procedural step that, if granted, enables Plaintiff to move for summary judgment or proceed to trial on its claim to the Assets. Similarly, if the Court orders Wilmington Trust to deliver the Assets to Florida, the Noteholders too can move for summary judgment or proceed to trial on their claim to the Assets.

Because adjudication of the instant Motion does not involve ruling on any Party's claim of entitlement to the Assets, I conclude that it is non-dispositive of any Party's claims or defenses. *Cf. Chevron Corp. v. Donziger*, No. 19-24295-MC, 2020 WL 3643043 (S.D. Fla. July 6, 2020) (O'Sullivan, C.M.J.) (ordering reissuance of stock certificates of impleaded third-party defendant and delivery of same for levy); *Highland Consulting Grp., Inc. v. Soule*, No. 19-cv-81636, ECF No. 615 (S.D. Fla. June 12, 2023) (Reinhart, M.J.) (order commencing proceedings supplementary and issuing notices to appear); *Sec. Alarm Fin. Enters., Inc. v. Parmer*, No. 12-CV-88, 2014 WL 4415950 (N.D.W.V. Aug. 18, 2024) (order granting motion for sale of assets), *reviewed for clear error*, 2014 WL 4414507 (N.D.W.V. Sept. 5, 2014); *Pacific Premier Bank v. Sandhu*, No. 20-cv-273, 2022 WL 658715 (S.D. Tex. Mar. 4, 2022) (order granting applications for writs of garnishment); *Whiteside v. Allegiance Bank*, No. 22-cv-1081, 2024 WL 218514 (E.D. Tex. Jan. 19, 2024) (same); *Zhu v. Li*, No. 19-cv-02534, 2024 WL 1122422, at *1 n.1 (N.D. Calif. Mar. 14, 2022) (order determining claim of exemption from execution).

## III. LEGAL STANDARD

"The procedure on execution—and in proceedings supplementary to and in aid of judgment or execution—must accord with the procedure of the state where the court is located, but a federal statute governs to the extent it applies." Fed. R. Civ. P. 69(a)(1). In Florida, proceedings supplementary are governed by section 56.29 of the Florida Statutes.

"The provisions of section 56.29 are 'intended to afford to a judgment creditor the most complete relief possible in satisfying his judgment' without the necessity of initiating a separate action." *MCI Telecomms. Corp. v. O'Brien Marketing, Inc.*, 913 F. Supp. 1536, 1539 (S.D. Fla. 1995) (quoting *Regent Bank v. Woodcox*, 636 So. 2d 885, 886 (Fla. 4th DCA 1994)).

> The court may order any property of the judgment debtor not exempt from execution or any property, debt, or other obligation due to the judgment debtor, in the hands of or under the control of any person subject to the Notice to Appear, to be levied upon and applied toward the satisfaction of the judgment debt.

Fla. Stat. § 56.29(6)(a). This includes "[l]ands and tenements, goods and chattels, equities of redemption in real and personal property, and stock in corporations." Fla. Stat. § 56.061. It also includes trademarks. *See Cont'l Cigar Corp. v. Edelman & Co., Inc.*, 397 So. 2d 957 (Fla. 3d DCA 1981); *Cuban Cigar Brands, N.V. v. Tabacalera Popular Cubana, Inc.*, No. 02-23124-CIV, 2008 WL 4279641, at *2 (S.D. Fla. Sept. 16, 2008); *Ultimate Combustion Co. v. Fuecotech, Inc.*, No. 12-60545-CIV, 2015 WL 11622426, at *2 (S.D. Fla. Apr. 28, 2015), *report and recommendation adopted*, 2015 WL 11622422 (S.D. Fla. May 18, 2015); *Flava Works, Inc. v. A4A Reseau, Inc.*, No. 14-23208-CIV, 2021 WL 3621982, at *8 (S.D. Fla. June 14, 2021), *report and recommendation adopted*, 2021 WL 2980200 (S.D. Fla. July 15, 2021).

Section 56.29(6) imbues a trial court with "broad authority to carry out the execution of monetary judgments." *Shim v. Buechel*, 339 So. 3d 315, 317 (Fla. 2022); *see also Ryan's Furniture Exch., Inc. v. McNair*, 162 So. 483, 487 (Fla. 1935). Specifically, the statute empowers the court to

> enter any orders, judgments, or writs required to carry out the purpose of this section, including those orders necessary or proper to subject property or property rights of any judgment debtor to execution, and including entry of money judgments . . . against any person to whom a Notice to Appear has been directed and over whom the court obtained personal jurisdiction irrespective of whether such person has retained the property . . . .

Fla. Stat. § 56.29(6)(a).

"While broad, that authority extends no further than the trial court's personal jurisdiction." *Shim*, 339 So. 3d at 317. "[I]t is well-stablished that a court's personal jurisdiction over a defendant gives the court the power to require a defendant to do or to refrain from doing anything beyond the limits of its territorial jurisdiction which it might have required to be done or omitted within the limits of such territory." *Id.* at 317–18 (internal quotations omitted).

## IV. DISCUSSION

### A. Florida Law Does Not Exempt Encumbered Property from Execution

Over and over again, Respondents assert, "[u]nder Florida law, property pledged as collateral for a loan [is] unreachable by a judgment creditor through a writ of execution in a proceedings supplementary." (ECF No. 192 at 3); *see generally* (ECF Nos. 130, 150, 192, 194, 215). Each time, Respondents cite the same two cases for this proposition: *Stengel v. Biggar*, 176 So. 786 (Fla. 1937), and *In re McCuan*, No. 14-bk-965, 2015 WL 7717422 (Bankr. M.D. Fla. Nov. 30, 2015), *aff'd*, No. 19-cv-317, 652 B.R. 361 (M.D. Fla. 2023). I have thoroughly examined Florida law and found that this is not correct. In light of the statements in *McCuan* that Respondents quote *ad nauseum*, these cases require some unpacking to show why they do not support Respondents' contention.

In *Stengel*, the plaintiff obtained a money judgment against the defendant and filed a petition for supplementary proceedings in aid of execution. 176 So. at 627–28. The defendant and his wife appeared before an appointed commissioner, where the plaintiff examined the defendant

and his wife under oath. *Id.* The commissioner made findings of fact to which the plaintiff objected and appealed. *Id.* at 628–29. The question before the Supreme Court of Florida was: "Did the lower court err in making and entering its order denying the [plaintiff's] exceptions to the commissioner's report"? *Id.* at 629. Because the plaintiff's appeal "raise[d] largely questions of fact," "[t]he burden [was] on the plaintiff to show affirmative[] error." *Id.* In affirming the order, the court wrote:

> The defendant was fully examined by counsel for plaintiff, and each property item owned by the defendant inquired into. *It is true he owned some property, but it was pledged for the payment of money loaned*. The stock in the corporation, while small, was not shown to be of very much value. He had borrowed money with which to carry forward his farming operations. . . . [W]hile it appeared that [his wife] owned stock in the corporation, it was obtained by her for wages as a clerk in the office of the corporation. It is academic that the property of the wife cannot be levied upon to pay the husband's debts.

*Id.* (emphasis added).

From this sentence, Respondents extrapolate the sweeping pronouncement that property pledged as collateral can never be reached by a judgment creditor. Only one case mentions *Stengel* for this proposition—*In re McCuan*. As we will see in a moment, that case does not stand for the rule Respondents urge either. Instead, *Stengel* is cited in the restatement for the rule that the separate property of a spouse is not subject to execution. *See* 24A FLA. JUR. 2d Executions § 13.

In *McCuan*, Regions Bank obtained a four-million-dollar judgment in Florida state court, and the court initiated proceedings supplementary. 2015 WL 7717422 at *1. The debtor filed for bankruptcy and the proceedings were removed to federal court. *Id.* Following discovery, the debtor and impleaded defendants moved for summary judgment. *Id.* at *3. "After extensive briefing," the bankruptcy court granted summary judgment on the defendants' assertion that two accounts "were pledged to SunTrust as collateral, thereby placing those two accounts beyond Regions' reach as a judgment creditor under the rational set forth in *Stengel v. Biggar*." *Id.* at *3, *5. When the plaintiffs' moved for reconsideration, the court explained,

> The Impleaded Defendants pointed to Plaintiffs' failure to address this issue in their reply brief. And at the April 29, 2015 hearing, counsel for the Impleaded Defendants discussed the pledge of the Brown Accounts, cited *Stengel* for the proposition that a pledged asset could not be the subject of proceedings supplementary, and once again pointed out that Plaintiffs had not opposed the summary judgment on this issue. Despite this second reminder, Regions' counsel made no effort at oral argument to distinguish *Stengel* and presented neither facts nor argument that the pledge of the Brown Accounts to SunTrust was defective or illusory. Nor did the Trustee's counsel raise this issue in his presentation. . . .

*Id.* at *6. Thus, the plaintiffs' failure to refute the contention that a pledged asset is not subject to execution resulted in summary judgment on that issue *by default*. The court denied reconsideration because "a party who fails to raise an argument in response to an opposing party's motion for summary judgment cannot raise that argument for the first time in a motion for reconsideration." *Id.* (citing *Griswold v. United States*, No. 93-565-CIV, 1994 WL 264644 (M.D. Fla. Mar. 24, 1994); *Nat'l Wildlife Fed'n v. Souza*, No. 08-14115-CIV, 2009 WL 4421254 (S.D. Fla. Nov. 23, 2009)).

Florida courts have long held the opposite to be true: "The *Altec Lansing* decision made it clear that a security agreement may create a prior lien in favor of the secured party, but it does not exempt the secured property from a forced judicial sale and it may be sold by [an] execution creditor subject to the lien." *J.N. Laliotis Eng'g Constr., Inc. v. Mastor*, 600 So. 2d 1271, 1273 (Fla. 2d DCA 1992) (citing *Altec Lansing, a div. of LTV Ling Atec, Inc. v. Friedman Sound, Inc.*, 204 So. 2d 740 (Fla. 3d DCA 1967)). Long ago, the Supreme Court of Florida held that, as a "general rule," a superior lienholder is not entitled to an injunction restraining the sale of mortgaged property under execution. *See Wildwood Crate & Ice Co. v. Citizens Bank of Inverness*, 123 So. 699, 701 (Fla. 1929). "Though sold under the executions, the chattels would remain subject to complainant's mortgage lien, if the mortgage lien be superior to the execution lien, and complainant's superior interest in the chattels would be neither divested nor affected by the execution sale." *Id.* at 702; *see also Bronson v. Willis*, 194 So. 245 (Fla. 1940) (holding that stock

owned by judgment debtor could be levied on and sold subject to creditor's preexisting security interest).

The Noteholders argue that *Mastor* and *Altec Lansing* are distinguished by *Brescher v. Associates Financial Services Co.*, 460 So. 2d 464 (Fla. 4th DCA 1984), which should govern here because Debtors' loan obligation to the Noteholders is in default. In holding that encumbered property was not exempt from judicial sale, *Altec Lansing* relied on section 679.311 of the Florida Statutes, which provided that a security agreement cannot prevent the voluntary or involuntary transfer of the debtor's rights in the collateral.[2] 204 So. 2d at 741 n.2. *Brescher* presented the question, "whether a secured party, upon default by a debtor, may recover possession of a chattel by replevin from a sheriff who has taken possession thereof under execution." 460 So. 2d at 465. The court distinguished *Altec Lansing* because that case "did not involve an allegation of default," which was a "crucial distinction" because section 679.503 of the Florida Statutes granted a secured party the right to take possession of the collateral in the event of default.[3] *Id.* at 466. As *Mastor* would later explain, "the holding of *Brescher* determined that as between the general provision of section 679.311 and the more specific provision of section 679.503," "the latter statute controlled." *Mastor*, 600 So. 2d at 1273; *see Brescher*, 460 So. 2d at 466–67. Therefore, the secured party could recover the collateral from the sheriff who had levied it subject to a writ of execution. *Brescher*, 460 So. 2d at 467.

The Motion currently before me presents the questions of whether the Court can order Wilmington Trust to deliver the Assets from Delaware to Florida and whether Plaintiff is entitled to such relief. There is no motion to repossess collateral before me; thus, *Brescher* is inapplicable.

[2] Section 679.311 has since been repealed. Its present-day successor is codified at Fla. Stat. § 679.40111, UCC § 9-401. There is no substantive difference between the operative and repealed statutes that is relevant to this case.

[3] Section 679.503 has since been repealed. Its present-day successor is codified at Fla. Stat. § 679.609, UCC § 9-609. There is no substantive difference between the operative and repealed statutes that is relevant to this case.

The Parties will have a fulsome opportunity to offer evidence and make arguments as to who is entitled to possession of the Assets or proceeds from the sale thereof. That matter is not properly before the Court today.

### B. Section 56.29(6) of the Florida Statutes Empowers the Court to Order an Impleaded Party Over Whom It Has Personal Jurisdiction to Relocate Property Belonging to the Judgment Debtor

At this juncture, Plaintiff has commenced proceedings supplementary and impleaded Wilmington Trust; Wilmington Trust possesses Assets belonging to the judgment debtor in Delaware; Plaintiff filed a complaint alleging fraudulent transfer; Wilmington Trust answered the complaint and acknowledged that this Court can exercise personal jurisdiction over it. The Motion requires me to determine whether, at this posture, the Court can order Wilmington Trust to relocate the Assets to Florida. I conclude that the statute unambiguously confers that authority to a trial court, and that such interpretation is consistent with Florida law.

Section 56.29(6)(a) provides in its entirety:

> The court may order any property of the judgment debtor not exempt from execution or any property, debt, or other obligation due to the judgment debtor, in the hands of or under the control of any person subject to the Notice to Appear, to be levied upon and applied toward the satisfaction of the judgment debt. The court may enter any orders, judgments, or writs required to carry out the purpose of this section, including those orders necessary or proper to subject property or property rights of any judgment debtor to execution, and including entry of money judgments as provided in ss. 56.16-56.19 against any person to whom a Notice to Appear has been directed and over whom the court obtained personal jurisdiction irrespective of whether such person has retained the property, subject to applicable principles of equity, and in accordance with chapters 76 and 77 and all applicable rules of civil procedure. Sections 56.16-56.20 apply to any order issued under this subsection.

As *Shim* held, the statute "unambiguously provides a trial court broad authority to order *any property of the judgment debtor* to be levied upon" and "enter any orders necessary or proper to subject property of any judgment debtor to execution." 339 So. 3d at 317 (cleaned up) (emphasis added). Such "orders, judgments, or writs required to carry out the purpose" of proceedings

supplementary may include "entry of money judgments . . . against any person to whom a Notice to Appear has been directed and over whom the court obtained personal jurisdiction." Fla. Stat. § 56.29(6)(a); *see Pollizzi v. Paulshock*, 52 So. 3d 786, 789 (Fla. 5th DCA 2010).

By its own terms, the statute contemplates the issuance of orders, judgments, or writs to impleaded parties over whom the Court has personal jurisdiction. The Court's power to "enter *any* orders necessary or proper to subject property of any judgment debtor to execution" is sufficiently broad to reach property owned by the debtor but possessed by an impleader.

Respondents' argument that the Assets are not "due to" Controladora is inapposite. The first sentence sets forth two objects that can be levied upon: (1) "any property of the judgment debtor not exempt from execution" *or* (2) "any property, debt, or other obligation due to the judgment debtor, in the hands of or under the control of any person subject to the Notice to Appear." Even though the Assets are pledged as collateral and in the possession of Wilmington Trust, Controladora remains the legal title holder of the Assets. *Cf. Bronson*, 194 So. at 246 (noting that although the stock has been pledged to Bronson to secure his note, the debtor held title to the stock on the date of the execution). Thus, the Court relies on its authority to order "any property of the judgment debtor" to be levied upon.

Critically, this is not a situation where a third-party has claimed *ownership* of the Assets. Such claims are adjudicated under the procedures established in sections 56.16–56.20. Here, the Noteholders have claimed that they hold superior perfected security interests to the Assets. As explained above, a superior lien does not exempt from execution property that belongs to the judgment debtor.

Respondents argue that, pursuant to *Shim*, a court may only order a "defendant," *i.e.*, a judgment debtor, to relocate property to Florida. But *Shim*'s holding was not so narrow. On the

contrary, the decision reinforced trial courts' "broad authority to carry out the execution of monetary judgments." 339 So. 3d at 317. Even if Respondents' reading was correct, Wilmington Trust *is* a defendant in this case; Plaintiff has filed a Supplemental Amended Complaint to which Wilmington Trust has answered.

There is no statutory or equitable justification for the distinction Respondents urge. If the judgment debtor was in possession of assets located in Delaware, this Court could order the debtor to bring those assets within Florida. *See Shim*, 339 So. 3d at 318. If the judgment debtor was the owner of stock whose certificates had been lost, this Court could order the debtor to reissue the stock certificates and deliver them to the Court. *See Hartford Fire Ins. Co. v. N.Y. Mart Grp., Inc.*, No. 18-cv-10276, 2021 WL 633362, at *4–5 (S.D. Fla. Jan. 21, 2021), *report and recommendation adopted*, 2021 WL 616949 (S.D. Fla. Feb. 17, 2021), *vacated on other grounds*, 2021 WL 1738798 (S.D. Fla. May 3, 2021). If an impleaded party owed any "property, debt, or other obligation" to the judgment debtor, the Court could order such property or debt to be levied upon. *See* Fla. Stat. § 56.29(6)(a); *Gen. Guaranty Ins. Co. of Fla. v. DaCosta*, 190 So. 2d 211 (Fla. 3d DCA 1966). On what basis is the Court's "well-established" power to order a person over whom it has jurisdiction "to do or to refrain from doing anything" beyond the boundaries of this State limited to a judgment debtor in proceedings supplementary? *See Shim*, 339 So. 3d at 317–18 (quoting *Fall v. Eastin*, 215 U.S. 1 (1909)).[4] There is none.

Respondents' constrained interpretation would enable any debtor to easily place assets out of a creditor's reach, *without even passing title*, by placing them in a third-party's possession in another State. If a Florida court cannot order a Florida citizen to bring the assets it possesses within

[4] "From a very early period, courts of equity having jurisdiction of the person of a party have exercised the power to compel him to perform a contract, execute a trust, or undo the effects of a fraud, notwithstanding it may relate to or incidentally affect the title to land in another jurisdiction." *Royal v. Parado*, 462 So. 2d 849, 854 (Fla. 1st DCA 1985) (quoting *Lakeland Ideal Farm & Drainage Dist. v. Mitchell*, 122 So. 516, 518 (Fla. 1929)).

the court's *in rem* jurisdiction, and a Delaware court cannot obtain *in personam* jurisdiction over the Florida citizen, then where can Plaintiff adjudicate its fraudulent transfer claim? The broad scope of Section 56.29(6) unambiguously prevents such a catch-22.

### C. Plaintiff's Final Judgment Entitles Plaintiff to Execution Regardless of Whether It Has a Valid Judgment Lien

The Noteholders argue that "[t]here is no evidence in the record that Plaintiff (*i.e.*, Tradewinds, Ltd.) has a judgment lien certificate in its name in Florida" because the name of the judgment creditor on the certificate Plaintiff has filed is "TRADEWINDS LTD. BELIZE, LLC," which is distinct from Tradewinds Ltd. or Tradewinds Consulting Ltd. (ECF No. 192 at 14–15). But this is of no moment because Plaintiff has a final judgment. *See* (ECF No. 1 at 2) ("[I]t is ORDERED AND ADJUDGED that Grupo Dolphin, S.A. de C.V. shall pay Tradewinds Ltd. the amount of $3,678,419.13 . . . .").

> A judgment creditor who has not acquired a judgment lien . . . or whose lien has lapsed may nevertheless proceed against the judgment debtor's property . . . subject to the priority of conflicting rights . . . . Such judgment creditor proceeding by writ of execution acquires a lien as of the time of levy and only on the property levied.

Fla. Stat. § 55.205(1). In other words, a judgment lien secures a judgment creditor's priority as to later perfected security interests, but it is not a prerequisite to execution. *See Sch. Bd. of Broward Cnty. v. J.V. Constr. Corp.*, No. 03-60005-CIV, 2004 WL 1304058, at *18 (S.D. Fla. Apr. 23, 2004); *United States v. Wright*, No. 97cr52, 2014 WL 12618176, at *2 (N.D. Fla. Sept. 29, 2014).

### D. An Order Requiring Delivery of the Assets to Florida Is Not Premature

The Noteholders further argue that Plaintiff must prevail at summary judgment or trial before it is entitled to an order relocating the Assets to Florida. In support, they cite *Cuban Cigar Brands, N.V. v. Tabacalera Popular Cubana, Inc.*, No. 02-23124-CIV, 2008 WL 4279641 (S.D. Fla. Sept. 16, 2008), and *Inversiones y Procesadora Tropical Inprotsa, S.A. v. Del Monte Int'l GmbH*, No. 16-24275-CV, 2019 WL 2255579 (S.D. Fla. Jan. 24, 2019), *report and*

*recommendation adopted*, 2019 WL 2254953 (S.D. Fla. Mar. 18, 2019). Neither of these cases support the Noteholders' contention.

In *Cuban Cigar*, the plaintiffs moved for summary judgment in proceedings supplementary on the ground that the defendants' trademarks must be seized and sold to satisfy the judgment debt. 2008 WL 4279641, at *1. In response, the defendants "den[ied] that they control the trademark rights at issue or that the trademarks are owned by Tabacalera Popular Cubana, Inc.," among other legal arguments. *Id.* In that case, the court needed to resolve questions of fact regarding ownership of the property at issue before the plaintiff could levy it.

Unlike *Cuban Cigar*, there is no factual dispute regarding ownership of the Assets; all agree that Controladora holds legal title to the Assets. Rather, Respondents argue that the Noteholders hold superior security interests to the Assets. When a priority dispute between a judgment creditor and secured creditors arises in proceedings supplementary, courts can order that the disputed assets be levied prior to determination of priority. *See Highland Consulting Grp., Inc. v. Soule*, No. 19-cv-81636, 2023 WL 3304533 (S.D. Fla. Mar. 9, 2023); *Hartford Fire Ins. Co. v. N.Y. Mart Grp., Inc.*, No. 18-cv-10276, 2021 WL 633362, at *5 (S.D. Fla. Jan. 21, 2021) ("Once the stock certificates are delivered to the Court, any disagreement about whether Hartford or another secured creditor has priority over the distributions can be resolved separately.").

In *Inversiones*, the debtor opposed the judgment creditor's motion to commence proceedings supplementary "on the grounds that the assets Del Monte seeks are located in Costa Rica, and that Del Monte must pursue those foreign assets through confirmation proceedings in Costa Rica." 2019 WL 2255579, at *7. The debtor further argued that "its intangible contract rights are not the type of property subject to proceedings supplementary to execution," and "Del Monte has failed to make any showing that the writ of execution has been returned." *Id.* I recommended

that the judgment creditor's motion to commence proceedings supplementary be granted. In adopting my recommendations, Judge Moreno wrote, "[t]he Court finds it appropriate to initiate the proceedings supplementary and then decide whether it can act on the property, i.e. the contractual rights, in the context of a summary judgment motion." 2019 WL 2254953, at *1.

But in this case, the issue of whether the Court can order Wilmington Trust to bring the Assets within the Court's *in rem* jurisdiction is fully briefed and ripe for adjudication. Indeed, the Court previously stated that it would not decide the priority dispute until the Assets were delivered to Florida. *See* (ECF No. 178 at 8 n.3).

In broad strokes, Respondents argue that the Noteholders hold valid, superior perfected security interests to the Assets; and Plaintiff argues that Debtors pledged the Assets as collateral with intent to hinder, delay, or defraud Plaintiff. These are the factual issues that will be determined on a motion for summary judgment or at trial. Following Wilmington Trust's compliance with this Order, there should be no need for further motion practice prior to the Parties' respective motions for summary judgment.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's Motion for an Order Directing Impleaded Party Wilmington Trust to Deliver Stock Certificates of Dolphin Leisure Inc. and Trademarks Owned by Controladora to Florida for Sale and Execution (ECF No. 181) is **GRANTED**, insofar as it requests the Court to order Wilmington Trust to deliver the Assets to Florida. Plaintiff's request for an Order of Sale and Execution is **DENIED, as premature**. Plaintiff may renew its request for such an Order following adjudication of the Parties' claims to the Assets.

In their Response, the Noteholders again requested that this Court recognize its security interests as superior to Plaintiff's writ of execution. A response brief is an improper vehicle to seek

relief. In any event, the request remains premature; to the extent it requires a ruling, the request is **DENIED**.

Accordingly, the Court hereby **ORDERS** the following:

1. Wilmington Trust **SHALL** deliver all of the Assets to a location in Florida and hold them in its possession in Florida until further proceedings in this matter. For the avoidance of doubt, the Assets include all "Physical Collateral" identified in Exhibit 5 to Affidavit of Jessica Jankiewicz (ECF No. 126-7).

**DONE AND ORDERED** in Chambers in Miami, Florida, this 12th day of February, 2025.

LAUREN F. LOUIS
UNITED STATES MAGISTRATE JUDGE